# George W. Pierce, Appt., *v.* Elizabeth McCracken et al.

Under an executory contract for the sale of land in consideration of covenants to be performed in future, the vendee is not entitled to a conveyance before performance.

An instrument in writing, without acknowledgment or words of inheritance, and entitled "an article of agreement," by which, in consideration of certain covenants to be performed in future by one party, the other party "agrees to sell and by these presents does sell and convey" a tract of land, is prima facie not a conveyance but an executory contract of sale.

Such a contract will not, in the absence of positive proof of fraud, accident, or mistake, be reformed by inserting words of inheritance.

(Decided November 1, 1886.)

Appeal from a decree of the Common Pleas of Mercer County dismissing a bill in equity. Affirmed.

This was a bill in equity, filed by George W. Pierce against

Elizabeth McCracken, Jane McCracken, and A. D. McCracken, guardian *ad litem* of Emma, Millus, and Jesse McCracken, for the reformation of the following instrument in writing:

"Article of agreement made and concluded on this 19th day of January, 1881, by and between Margaret R. McCracken, of Sandy Creek township, Mercer county, Pa., of the first part, and George Pierce, of same township, county and state aforesaid, of the second part, witnesseth: that in consideration of the covenants and agreements hereafter mentioned, that M. R. McCracken, the party of the first part, for herself, her heirs and assigns, agrees to sell and by these presents does sell and convey unto the party of the second part all that certain piece or parcel of land [describing it].

"In consideration whereof George Pierce, party of the second part, for himself, his heirs and assigns, agrees to pay all the just debts of the party of the first part, provide her with clothing, provisions, and a home during her lifetime, paying doctor bills and funeral expenses. Also, my children, Emma, Millus, and Jesse, are to be cared for, fed, clothed, and schooled, and have a home until they are eighteen years of age, and to pay them $75 each when they become of age [with other provisions of a like character as to other children]. And it is further agreed to by the party of the second part that if any valuable mineral is found on said land within seven years, a proper search having been made, that Anna M. Pierce, wife of second party, Elizabeth, George A., John, Jane, Emma, Millus, and Jesse McCracken are all to be equal sharers in one half of the profits arising from said fund.

"For the performance of the above agreement we bind ourselves, our heirs and assigns. In witness whereof we have hereunto set our hands and seals, the day and year above written."

The agreement was duly signed, sealed, and witnessed.

The bill alleged that Margaret R. McCracken died soon afterward and that the intention of the parties was to convey the fee and not merely a life estate, but that by an ignorant mistake of the scrivener the words "and his heirs" had been omitted; and accordingly the bill prayed that the agreement might be amended so as to read "Margaret R. McCracken, the party of the first part, for herself, her heirs and assigns, agrees to sell, and by these presents does all and convey, unto the party of the second part and his heirs, all that certain piece or parcel of land," etc.

as described in the first paragraph, the balance of said "article of agreement" to remain as written.

The answer of the defendants, who were the children and heirs of Margaret R. McCracken, denied the intention and mistake alleged in the bill.

The cause was referred to a master, who recommended a decree in accordance with the prayer of the bill. Exceptions to his report were filed by the defendants. Upon sustaining the exceptions and entering the decree from which this appeal was taken, the court below, McMichael, J., delivered the following opinion:

"The plaintiff's case may be briefly stated thus:

"That he and Margaret R. McCracken intended that she should, by the writing entitled 'article of agreement,' dated January 19, 1881, convey to him, in fee simple, the land described in that writing, and that by mistake of the scrivener the words necessary to convey the fee were omitted from the writing.

"It may be conceded that if it be properly shown that the parties to that contract intended that a fee should be conveyed to the plaintiff by it, then it logically follows that the omission of the words necessary to pass the fee—of the words necessary to execute their purpose—was a mistake. If that be conceded, then the question is solved when the intention of the parties to the contract is discovered.

"To maintain his case, that the writing does not express the intention of the parties, and that it should therefore be reformed, it is necessary that the plaintiff should have two propositions determined in his favor:

"First. That the parties to the writing intended that a fee should be conveyed to the plaintiff.

"Second. That they intended that such fee should be conveyed by this writing.

"The learned master has determined both of these propositions in favor of the plaintiff. To his conclusion—that it was the entire estate, the fee in the land described in the contract, which was the subject-matter of the contract between the parties—there has not been any direct exception filed; and that conclusion was not seriously controverted on the argument. The real contest is on the second proposition, or, in other words, whether the 'article

of agreement' was, and was intended to be, an executed contract on the part of Margaret R. McCracken.

"I have carefully examined the evidence and the very able and clear report of the learned master, but I have not been able to arrive at the conclusion which he reached on this question.

"The position that the contract was executed and not executory, on the part of Margaret R. McCracken, rests exclusively on the words 'and by these presents does sell and convey,' which are found in the contract. There are no facts proven by the testimony which are not just as consistent with the position that the contract is executory as they are with the position that it is executed. There has been no argument advanced by the counsel for the plaintiff or by the master in support of his conclusion, which cannot be made just as forcible in support of the other view, save only the fact and the argument that these words just quoted are in the contract and import a present conveyance, an executed contract.

"The facts as the learned master states them, 'that Mrs. McCracken was in very ill health, and was apprehensive that death was near. In view, therefore, of death, she was naturally desirous of making a final disposition of her property, and of making the best possible provision for the comfort and support of her children,'—are just as consistent, indeed more consistent, with the view that she intended the title to pass to George W. Pierce when he had paid the consideration—when her children had received the comfort and support which she was so desirous of securing for them,—than it is with the view that she intended to pass a present title to the land and thus leave them without any security for their 'comfort and support,' except the personal covenant of the vendee, who was without means, as appears by the certificate on the bill in this case. It seems to me more likely that when she had in her hands the means of securing to her children 'the best possible provision for their comfort and support,' she would keep the security rather than trust the individual responsibility of one who could not be compelled to execute his contract, no matter how faithful she believed him to be.

"Again; it is said that on the same day that the 'article of agreement' was made 'she made a distribution among her children of all her personal property in possession;' and from this the inference is drawn that she also wished to make a final conveyance of her real estate. On the same point, the scrivener tes-

tified that 'she was making a final disposition of all her property.' How did the witness know this? He states no fact from which he could learn it. She did not tell him that it was her purpose to finally dispose of all she had or say anything of like import. His remark that 'she was making a final disposition of all her property' appears to have been his inference from what she did, and was, therefore, no evidence at all. As an inference, like the one just stated as suggested by the learned master, it was unwarranted. We cannot infer from the fact that she disposed of her personal property, that she intended to make a deed and final conveyance of her real estate.

"But if one suppose that she intended a disposition of her land which should be final so far as she was concerned, what then? Why simply this, that such a supposition is just as consistent with the position that the contract that she made is executory as it is with the position that it is executed. In either case it was final so far as she was concerned.

"The testimony of other witnesses that she said: 'I will let George Pierce have the land and pay you children so much when you come of age;' that 'she thought George Pierce would do the fair thing as he was to have the land at her death;' that 'she said she had made an agreement with George but he could not keep them (the children) all—he can't do so much. . . . If he (George) could not get through and keep the place, he could sell it and get out of it what he could and still make a home of it,' can all be explained as consistently with the hypothesis that the agreement was executory on her part as with the other position.

"The question as to what remedy the children of Mrs. McCracken would have in case the contract is held to be executory on her part, and the plaintiff should fail to keep his covenants, has little to do with the present question. This much, at least, is certain: that the plaintiff would not have a complete title to the land until his covenants were performed, and that the legal title is vested in the heirs of Mrs. McCracken; and is a security for the performance by the plaintiff of his covenants.

"This much has been said to show that there are no extrinsic facts from which any fair argument can be made to aid the plaintiff's position that the contract must be considered as executed on the part of Margaret R. McCracken.

"We come, then, to determine the plaintiff's right to relief from an examination of the writing itself; and here, as I said be-

fore, the case rests exclusively on the words, 'and by these presents does sell and convey.' There is nothing else in the writing which points with any clearness or certainty to the fact that it was intended to take effect as a deed. No doubt the words quoted do import a present conveyance; unless their proper legal effect be in some way limited, they would be sufficient to constitute a defense in an action of ejectment against the vendee for the purchase money. But are they sufficient here to carry the plaintiff's case? They are preceded by these words: 'The party of the first part for herself, her heirs and assigns agrees to sell.' These are words which import an executory contract and at once raise a doubt as to what the character of the writing is.

"Then the paper purports to be an 'article of agreement.' It is in the form of an executory contract. The consideration is all to be paid and performed in the future. It contains no words of inheritance. It is not acknowledged as deeds usually are. It is granted that no one nor all of these things are conclusive against the writing being an executed contract; but they each and all tend to increase the doubt, whether it be of that character.

"Then it is stated by the plaintiff in his bill, and found by the master in his report, that the scrivener and also the parties were ignorant of the legal import or effect of the usual and ordinary words employed to create estates; and the argument is made that the mistake in omitting the word 'heirs' was purely and simply the result of ignorance of the effect of either the insertion or omission of such words in a conveyance. If this argument were turned on the other side it will be found quite as convincing. It would then stand thus: the mistake in inserting the words 'and by these presents does sell and convey' was simply the result of ignorance of the effect of either the insertion or omission of such words in an executory argument. How could· the plaintiff as he stands in this case answer that position? Is it not just as likely that these words were inserted in a contract through ignorance as that the word 'heirs' was omitted from a deed through ignorance? When we consider the apparent character of the paper, *viz.*, that it had the form of a contract, it seems to me that the weight of the argument is against the plaintiff.

"To put the argument into another form, also suggested by the learned master's report: Is it probable that if the intention had

been to convey the estate, that is to make a deed, the parties would not have made a deed in the ordinary form?

"From what I have said, I think the conclusion may be fairly drawn that it is at least as likely that the words, 'and by these presents does sell and convey,' were inserted by mistake or in ignorance of their legal import as that the word 'heirs' was omitted for like causes. If so, then the right of these words to exist in the contract is doubtful. But to entitle the plaintiff to a decree, it is not sufficient that the mere right to the existence of these words be maintained. They must do much more than simply maintain themselves in the struggle for life. On them rests the entire burden of showing clearly and satisfactorily that this writing should be reformed. For in this they receive no aid from any other part of the paper, and the parol testimony is entirely silent on the question of whether the word 'heirs' was omitted by mistake, unless, indeed, the volunteered answer of the scrivener is evidence on that subject; and if it is, its weight is on the other side.

"The court will not change a written contract unless the proof of mistake be very clear and convincing. It is possible for that proof to be found sometimes in the contract itself. It may be furnished by parol testimony or other evidence. But it must be found somewhere, otherwise the writing must remain unchanged.

"When all the evidence in the case is considered, it does not fill up the necessary measure of proof to entitle the plaintiff to a decree.

"The plaintiff's bill is dismissed, the plaintiff to pay the costs."

The assignments of error specified the action of the court: 1, In deciding the "article of agreement" to an executory contract; 2, in not deciding it to be an executed contract; 3, in not granting the plaintiff's first prayer for reformation of the "article of agreement;" 4, in dismissing the bill; and 5, in decreeing that plaintiff pay the costs.

*J. G. Elliott* for appellant.

*Miller & Gordon,* for appellees.—The intention of the parties to a written agreement, drawn from all its parts, is the criterion to decide whether it operates as a present conveyance or as an

executory contract. Stewart v. Lang, 37 Pa. 201, 78 Am. Dec. 414; Ogden v. Brown, 33 Pa. 247.

Courts ought to be slow to regard instruments of this kind as absolute conveyances. It puts the grantors entirely at the mercy of the grantee. The grantee can sell the estate, or it may be sold for his debts, and the grantor (or as in this case her minor children) may become a public charge, and the object of the agreement entirely defeated. Shirley v. Shirley, 59 Pa. 273.

PER CURIAM:

The contract in this case is executory, and whenever the plaintiff performs his covenants as therein stated, he can compel the execution to himself of a good and sufficient deed in fee, but not before.

Decree affirmed and appeal dismissed, at the costs of the appellant.